**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Grubbs,<br><br>    Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>    Defendants. | No. CV-20-02369-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 15). Plaintiff filed a Response in Opposition (Doc. 19), and Defendants filed a Reply (Doc. 22). The Court will now issue its decision.

**I. Background**

This case arises out of an employment suspension and a subsequent resignation. As alleged in his Second Amended Complaint ("SAC"),[1] Plaintiff Larry Grubbs ("Plaintiff") was an employee the of Arizona Criminal Justice Commission ("ACJC") in October 2018. (Doc. 14 at ¶ 16). He is also a member of the Church of Jesus Christ of Latter-day Saints (the "Church"). (*Id.* at ¶ 17). During his employ, Plaintiff was supervised by ACJC Director Andrew LeFevre and ACJC Deputy Director Anthony Vidale. (*Id.* at ¶ 10).

In October 2018, a new employee began working for the ACJC as the Public Information Officer ("PIO"). (*Id.* at ¶ 18). As alleged, this new "PIO had nude pictures that were commercially available for purchase online." (*Id.* at ¶ 24). In addition, in or

---

[1] The Court will assume the SAC's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

around February 2019, the ACJC's Facebook page became so entangled with the PIO's personal Facebook page that links to the nude photographer's website appeared as related pages to that of the ACJC's Facebook page. (*Id.* at ¶ 25). In November 2018, Plaintiff began reporting this information to his supervisors as potential violations of State employee policy and State law. (*Id.* at ¶ 19). He further informed them he was "concerned that exposure to the substance of the issues related to the PIO would directly conflict with his religious beliefs and personal standards." (*Id.* at ¶ 20). Because of these concerns, he told them he was uncomfortable meeting alone with the PIO, as his job sometimes required. (*Id.* at ¶ 21). He supervisors acknowledged the basis of his concerns and informed him they would work with him on these issues. (*Id.* at ¶ 22). Plaintiff also reported these issues to the Arizona Department of Administration ("ADOA"). (*Id.* at ¶ 23).

On April 3, 2019, Plaintiff met with his supervisors to discuss these ongoing issues. (*Id.* at ¶ 27). During that meeting, he expressed his concern regarding the issues related to the PIO, their impact on the ACJC, his increasing difficulties with the ACJC work environment conflicting with his personal beliefs, and Mr. LeFevre's responses to Plaintiff's continued complaints. (*Id.* at ¶ 28). He also requested permission to seek further guidance from the ADOA. (*Id.* at ¶ 29). His supervisors told him there were no issues with the conduct of the PIO and that Plaintiff's concerns were based on his personal values and religious beliefs and because of that, they did not have to address them. (*Id.* at ¶ 30). Plaintiff received a memorandum from Mr. LaFevre that documented their meeting and expressed concern about Plaintiff's recent behavior, including his concern with the actions of employees and matters not under his supervision. (*Id.* at ¶¶ 32, 36). Defendants included a copy of this memorandum in their Motion.[2] (Doc. 15, Ex. 1 at 2).

On April 20, 2019, Plaintiff contacted the ADOA Human Resources department and

---

[2] In assessing the sufficiency of a complaint on a motion to dismiss, a court may also consider evidence on which the complaint relies if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court will consider the memorandum. Plaintiff cites to this memorandum in his Complaint (Doc. 14 at ¶ 32), the memorandum is central to his claim, and neither party has questioned its authenticity.

informed them about the PIO and the nude photos available for purchase online. (*Id.* at ¶ 33). On May 2, 2019, Plaintiff was suspended without pay for three days. (*Id.* at ¶ 35). The notice of "suspension cited the April 3, 2019 written memorandum and his subsequent communications with the ADOA as grounds" for the discipline. (*Id.* at ¶ 30). On May 8, 2019, the first day back from his three-day suspension, Plaintiff resigned from his employment with ACJC. (*Id.* at ¶ 39).

On September 13, 2019, Plaintiff filed a charge with the Arizona Civil Rights Division ("ACRD") and the Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination and retaliation by ACJC. (Doc. 14 at ¶ 40). After receiving a right to sue letter dated August 14, 2020, Plaintiff filed this lawsuit in the Superior Court of Arizona, Maricopa County, on October 28, 2020. (Doc. 1-3). He filed a First Amended Complaint ("FAC") on November 3, 2020. (Doc. 1-4). Defendants removed the action to this Court on December 7, 2020. (Doc. 1). On December 18, 2020, Defendants moved to dismiss the FAC. (Doc. 5). On January 13, 2021, Plaintiff filed a motion to amend and responded to Defendants' motion. (Doc. 8–9). On March 1, 2021, the Court granted the motion to amend and denied the motion to dismiss the FAC as moot. (Doc. 13).

Plaintiff filed his SAC on March 11, 2021. (Doc. 14). The SAC brings four causes of action. Count I and Count II allege unlawful religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964. (Doc. 14 at ¶¶ 44–56, 57–68). Count III alleges a whistleblower claim under A.R.S. § 38-532 against his supervisors, Mr. LeFevre and Mr. Vidale. (*Id.* at ¶¶ 69–77). Count IV alleges § 1983 claims against Mr. LeFevre and Mr. Vidale. (*Id.* at ¶¶ 78–81).

Defendants move to dismiss the entire SAC under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(5).[3] (Doc. 15 at 1).

---

[3] Although Defendants indicate they are also bringing a motion under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process (Doc. 15 at 1), the Motion fails to elaborate. To the extent that Defendants bring affirmative defenses under Arizona's notice of claim requirement (*see id.* at 10), the Court will evaluate them under the 12(b)(6) standard. *See Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) (noting that the Federal Rules of Civil Procedure govern service of process in federal court, not state rules).

- 3 -

## II. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. Analysis

Defendants argue all four of the SAC's Counts fail to state a claim. (Doc. 15). The Court will address each in turn.

### a. Unlawful Religious Discrimination under Title VII of the Civil Rights Act

Count I alleges unlawful religious discrimination under Title VII of the Civil Rights Act of 1964. (Doc 14 at ¶¶ 44–56). Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). A claim for Title VII religious discrimination arises under two grounds: (1) disparate treatment because of a plaintiff's religion or (2) failure to accommodate a plaintiff's religious beliefs. *See Bodett v. CoxCom, Inc.* 366 F.3d 736, 742 (9th Cir. 2004)) (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

### 1. Disparate Treatment under Title VII

"To state a claim for disparate treatment under Title VII, a plaintiff must plausibly allege that: (1) [he] was a member of a protected class; (2) [he] was qualified for [his] position; (3) [he] experienced an adverse employment action; and (4) similarly situated individuals outside [his] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Bodett v. CoxCom, Inc.* 366 F.3d 736, 743 (9th Cir. 2004) (citing *Peterson*, 358 F.3d at 603) (affirming dismissal of Title VII discrimination claims because plaintiff had not plausibly alleged a prima facie case for disparate treatment)). "A plaintiff may show *either* that similarly situated individuals outside her protected class were treated differently, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson,* 358 F.3d at 603.

Here, Plaintiff alleges the following: (1) he was a member of a protected class—a devout practicing member of the Church (Doc. 14 at ¶ 17); (2) he was employed as a Program Manager by the ACJC for the State (*Id.*); (3) he was suspended without pay for

three days after reporting his concerns (*Id.* at ¶ 35); and (4) upon "return from his suspension, the discrimination, hostility, and retaliation so intensified that it created an intolerable work environment [and therefore] he was forced to resign." (*Id.* at ¶ 38–39).

Defendants argue the Court should reject Plaintiff's disparate treatment claim because he failed to sufficiently plead the fourth element of his prima facie case. (Doc. 15 at 6). Specifically, Defendants argue he failed to allege an employee who was not a member of the Church received less severe discipline than Plaintiff for neglecting his work responsibilities. (*Id.*) Defendants further claim Plaintiff failed to allege sufficient facts to suggest that his religion was a more likely explanation than his investigation into the PIO for Defendants' decision to suspend him for three days. (*Id.*)

Although Plaintiff does not allege any similarly situated individual outside his protected category were treated more favorably, the Court finds the circumstances surrounding his adverse employment action, as alleged, plausibly give rise to an inference of discrimination. Plaintiff was suspended without pay for three days on May 2, 2019, soon after voicing concerns about another employee and Plaintiff's religious beliefs. On the day he returned, May 8, 2019, he resigned "because the discrimination, hostility, and retaliation so intensified that it created an intolerable work environment." (Doc. 14 at ¶¶ 38–39). Although the allegation lacks specifics, Rule 8 does not require as much. Defendants are on notice of the claim and may seek these specifics during discovery. In other words, at this stage the Court finds the circumstances surrounding Plaintiff's suspension and subsequent resignation are sufficiently plead to give rise to an inference of discrimination. Viewing these allegations in the light most favorable to the Plaintiff, as is required at the 12(b)(6) stage, *see Lee*, 250 F.3d at 679, the Court finds he has alleged plausible "other circumstances" surrounding his termination that reveal a bias or animus against his religion that give rise to an inference of discrimination. *See Peterson,* 358 F.3d at 603.

**2. Accommodation of Religious Beliefs**

To state a Title VII claim for religious discrimination on a failure-to-accommodate

theory, a plaintiff must plausibly allege that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606.

Plaintiff alleges he is a devout practicing member of the Church and could not meet alone with the PIO because he felt doing so conflicted with his religious beliefs. (Doc. 14 at ¶¶ 17, 20–21). In November 2018, he informed his supervisors that exposure to the substance of the issues related to the PIO would conflict with his religious beliefs. (*Id.*) In May 2019, he was suspended without pay for three days and, upon return from his suspension, says the hostility so intensified that it created an intolerable work environment, forcing him to resign. (*Id.* at ¶¶ 35, 38–39).

Defendants argue the Court should reject Plaintiff's accommodation claim because he failed to allege that a tenet of his faith conflicted with one of his job duties at ACJC. (Doc. 15 at 8). Defendants argue he told his supervisors that he felt "uncomfortable" meeting with the PIO alone but did not inform them his religion prohibited it. (*Id.*) Defendants further claim Plaintiff alleged no facts to suggest that ACJC suspended him for three days because he refused to meet alone with the PIO. (*Id.*)

The Complaint alleges that in or around November 2018, Plaintiff informed his supervisors he was uncomfortable meeting alone with the PIO because "exposure to the substance of the issues related to the PIO conflicted with his religious beliefs." (Doc. 14 at ¶ 20–22). Specifically, Plaintiff discovered that the PIO had nude pictures available for purchase online. (*Id.* at ¶ 24). Plaintiff alleges his supervisors acknowledged the basis of his concerns and said they would accommodate him and work with him on these issues. (*Id.* at ¶ 22). Thereafter, in or around April 2019, Plaintiff says he again met with his supervisors to discuss these ongoing issues. At this time, Plaintiff says he reiterated his concerns about the PIO and the ACJC work environment conflicting with his personal beliefs. (*Id.* at ¶ 28). He also alleges he complained about the treatment he received from

his supervisors because of his continued complaints. (*Id.*) His supervisors, however, told Plaintiff no issues existed with the conduct of the PIO and his concerns were based on his "personal values and religious beliefs" and because of that, they did not have to address them. (*Id.* at ¶ 30).

Taking the allegations of the SAC as true, Plaintiff sufficiently states a claim for failure to accommodate. Contrary to Defendants contentions, the SAC alleges that Plaintiff informed his supervisors of his religious beliefs, and the conflict he believed meeting alone with the PIO posed. (*Id.* at ¶ 21). Moreover, a month after this meeting, Plaintiff was suspended without pay for three days. (*Id.* at ¶ 35). The suspension letter cited Plaintiff's continued concern for the conduct of other state employees, the significant energy he spent on matters and job duties outside his management, and his insistence on seeking answers beyond the executive director as reasons for the adverse employment action. (Doc. 15 at 4). Plaintiff claims that despite the content of this letter he was suspended because he voiced concerns about meeting alone with the PIO because of his religious beliefs. (*Id.* at ¶¶ 28, 35). The Court finds these factual allegations state a plausible claim for failure to accommodate Plaintiff's religious beliefs.

Given the surrounding circumstances of Plaintiff's suspension and his subsequent resignation, the Court finds Count I sufficiently states a claim. *See Iqbal*, 556 U.S. at 679.

### b. Retaliation under Title VII

Count II alleges unlawful retaliation under Title VII of the Civil Rights Act of 1964. (Doc 14 at 8). To state a claim for Title VII retaliation, a plaintiff must plausibly allege "that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Coleman v. Home Health Resources, Inc.*, 269 F. Supp. 3d 935, 941 (D. Ariz. 2017) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "A plaintiff need not make a prima facia showing to survive a motion to dismiss provided he otherwise set forth a short and plain statement of his claim showing that he is entitled to relief." *Ortez v. Washington County*, 88 F.3d 804, 808 (9th Cir. 1996).

Here, Plaintiff alleges he met with his supervisors to discuss how the ACJC work environment was increasingly conflicting with his personal beliefs, and that he was being subjected to negative treatment from them because of his continued complaints. (Doc. 14 at ¶ 28). He says he was suspended without pay for three days because of his communications with the Arizona Department of Administration ("ADOA") and, upon return from his suspension, the discrimination, hostility, and retaliation so intensified that it created an intolerable work environment, forcing him to resign. (*Id.* at ¶¶ 35, 36, 38–39).

Defendants argue the Court should reject Plaintiff's retaliation claim because he failed to plead the first and third elements of the prima facie case. (Doc. 15 at 8). Specifically, Defendants argue he failed to allege he opposed an employment practice he believed violated Title VII's prohibition on religious discrimination. (*Id.* at 9). They further claim Plaintiff opposed conduct by a co-worker that he believed potentially violated "State employment policy and State law," as well as "his religious beliefs and personal standards." (*Id.*) Defendants claim Plaintiff's complaint about violations of state employment policy and conflicts with his religious beliefs was not protected activity under Title VII. (*Id.*)

Filing an internal complaint under an established reporting procedure, raising concerns in a discussion with a human-resources representative, or filing an EEOC complaint are all protected activities. *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (internal complaint); *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (human-resources complaint and discussion); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) (EEOC complaint). The action that the employee opposes need not actually violate Title VII; a "reasonable belief that the employment practice she protested was prohibited under Title VII" is sufficient. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). The Court finds Plaintiff alleged sufficient facts giving rise to a plausible retaliation claim. Plaintiff alleged that he was forced to resign because the discrimination, hostility, and retaliation so intensified upon his return

from his three-day suspension that it created an intolerable work environment. (Doc. 14 at ¶ 35, 38–39). His Complaint detailed the events leading to his resignation, provided relevant dates, and expressed increasing difficulties with the treatment he received from his supervisors because of his continued complaints. (*Id.* at ¶ 28). These are allegations of Plaintiff engaging in a protected activity, namely, his repeated complaints to his supervisors about meeting alone with the PIO because of his religious beliefs. *Villiarimo*, 281 F.3d at 1064. Moreover, his suspension, subsequent resignation, and the negative treatment he received from his supervisors based on his complaints and his religious beliefs reveal a link between his complaints and an adverse action. (Doc. 14 at ¶¶ 28, 35, 38–39). Again, at this stage, and viewing the statements in Plaintiff's favor, such allegations suffice to show a plausible retaliation claim. The Court will therefore not dismiss Count II.

### c. Whistleblower Claim Under Arizona Law

Count III alleges a whistleblower claim under A.R.S. § 38-532 against Plaintiff's supervisors, Mr. LeFevre and Mr. Vidale. (Doc. 14 at ¶¶ 69–77). Defendants challenge this claim on statute of limitations grounds and on grounds that Plaintiff failed to comply with Arizona's notice of claim statute. (Doc. 15 at 10).

### 1. Time Bar

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Under Arizona law, "against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterwards." A.R.S. § 12-821. "[A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B).

Here, Plaintiff alleges a claim under A.R.S. § 38-532 based on Defendants

1   "disciplining and suspending him" because he "disclosed information . . . that he
2   reasonably believed were [sic] a matter of public concern regarding potential violations of
3   the law regarding the PIO's actions." (Doc. 14, ¶ 72). Plaintiff further contends he could
4   not file suit until he received his Notice of Suit Rights from the EEOC on August 14, 2020.
5   (Doc. 19 at 8). Defendants argue the Court should reject Plaintiff's whistleblower claim
6   because he failed to file his claim within the one-year limitation. (Doc. 15 at 8).
7   Specifically, Defendants argue his cause of action accrued no later than May 2, 2019, when
8   Plaintiff was suspended without pay for three days. (Doc. 22 at 5). They contend, under
9   A.R.S. § 12-821, Plaintiff should have filed this lawsuit no later than May 2, 2020. (*Id.*)
10  Defendants further argue Plaintiff did not file his Complaint until October 28, 2020—more
11  than 17 months after the discipline and suspension that he alleges as the basis for his claim
12  under A.R.S. § 38-532. (*Id.*)

13  The Court finds Plaintiff's argument that his Title VII claim tolled the limitations
14  period for his Arizona whistleblower claim unavailing. To be sure, Plaintiff did not receive
15  his Notice of Suit Rights from the EEOC until August 14, 2020. (Doc. 14, Ex. B at 17).
16  The Court, however, could find no authority for Plaintiff's contention that filing a charge
17  with the EEOC under Title VII tolled the one-year statute of limitations on state-law claims
18  against Arizona public entities and employees. Indeed, the Supreme Court has rejected a
19  similar contention. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 454 (1975)
20  (statute of limitations for claim brought under 42 U.S.C. § 1981 not tolled by filing Title
21  VII charge with EEOC). In *Johnson*, the Court acknowledged Title VII proceedings are
22  often beneficial, but the Court also held "Congress did not intend for those proceedings to
23  delay independent avenues of redress." *See Arnold v. United States*, 816 F.2d 1306, 1313
24  (9th Cir. 1987) (holding federal policy [did not] mandate tolling of a California statute of
25  limitations applicable to state tort claims arising from the same facts as an employee's Title
26  VII claim while that EEOC charge was pending). The Ninth Circuit makes clear that a
27  charge before the EEOC alleging claims in violation of Title VII does not toll the
28  limitations period for state law tort claims. Since Plaintiff failed to bring his state-law

whistleblower claim within the one-year limitation period, the Court will dismiss Count III.

### 2. Notice of Claim

Finally, Defendants seek to dismiss Mr. LeFevre and Mr. Vidale from this action because Plaintiff failed to provide them with proper service. Arizona law requires that, before a lawsuit alleging state law causes of action against a public entity, school, or employee, a plaintiff must individually serve each public defendant with a notice of claim ("NOC") within 180 days of when the cause of action accrued. *See* A.R.S. § 12-821.01(A); *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230, ¶ 25 (Ariz. Ct. App. 2007) ("When a person asserts claims against a public entity and a public employee, the person 'must give notice of the claim to both the employee individually and his employer.'") (quoting *Crum v. Super. Ct.*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996) (emphasis in the original)).

Defendants argue the Court should reject Plaintiff's claim because he failed to serve his supervisors Mr. LeFevre and Mr. Vidale individually with an NOC. (Doc. 15 at 11). Defendants further contend Plaintiff's claim should be dismissed with prejudice because more than 180 days have passed since Plaintiff resigned from his employment with ACJC on May 8, 2019 (the most recent date upon which his whistleblower claim could have accrued). (*Id.*) In response, Plaintiff argues that he sent numerous demand letters setting forth the basis of his claims and amounts to be accepted as settlement, in accordance with applicable notice of claim requirements. (Doc. 14 at ¶ 76).

"Persons who have claims against a . . . public employee shall file claims with the person or persons authorized to accept service for the . . . public employee as set forth in the Arizona rules of civil procedure . . . ." A.R.S. § 12–821.01(A). Rule 4.1(d) governs service upon individuals. To perfect his claims against an individual supervisor, Plaintiff had to deliver a notice of claim to the supervisor personally, an individual of suitable age and discretion residing with the supervisor, or the supervisor's appointed agent. A.R.S. § 12–821.01(A); Ariz. R. Civ. P. 4.1(d). Both of Plaintiff's supervisors submitted affidavits stating that a notice of claim was not personally delivered to them, that they had never

appointed an agent for service of process, and that they did not waive service of a Notice of Claim. (Doc. 15 at 6–8).

Without citation to any part of the record, Plaintiff claims that he sent the State multiple demand and statement letters where he set forth his claims against his supervisors. (Doc. 19 at 8). He cites three dates when he sent demand letters but failed to include these letters in the record and does not substantiate these dates in his Complaint. (*Id.*) Even so, Plaintiff admits he sent these demand letters to the State—not to either of his supervisors. (Doc. 19 at 8). These letters are insufficient. *See Harris v. Cochise Health Sys.*, 160 P.3d 223, 230, ¶ 25 (Ariz. Ct. App. 2007) ("When a person asserts claims against a public entity and a public employee, the person 'must give notice of the claim to *both* the employee individually and his employer.'") (quoting *Crum v. Super. Ct.*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996) (emphasis in the original)). A.R.S. § 12-821.01(A) demands strict compliance with its notice of claim statute; substantial compliance is insufficient. *See Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 630 (Ariz. Ct. App. 2010). In his response to Defendant's motion, Plaintiff failed to proffer any evidence that he actually served a notice of claim on either of his supervisors. Because Plaintiff failed to individually serve his supervisors and, because more than 180 days have passed since Plaintiff resigned from his employment with ACJC, the Court will dismiss Mr. LeFevre and Mr. Vidale from Count III with prejudice.

**d. 42 U.S.C. § 1983 Claim**

Count IV alleges a claim under Section 1983 of Title 42 of the U.S. Code. (Doc. 14, ¶¶ 78-81). Section 1983 provides a cause of action for persons who have been deprived of rights "secured by the Constitution or laws" of the United States. 42 U.S.C. § 1983 (2006). Section 1983 "is not itself a source of substantive rights" but only provides a cause of action "for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979).

Plaintiff's Section 1983 claim seeks relief for being "deprived . . . of his rights under the laws of the United States to not be subjected to discriminatory treatment and

retaliation." (Doc. 14, ¶ 80). His Section 1983 claim therefore appears to seek relief for rights guaranteed by Title VII itself. Section 1983 claims, however, are pre-empted "where Congress has evinced an intent to preclude such claims through other legislation." *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009) (holding that the Age Discrimination in Employment Act ("ADEA") pre-empts Section 1983 claim based on violations of the ADEA)). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). Since Plaintiffs Section 1983 claim relies entirely on the law undergirding Title VII, the Court finds Plaintiff "may not use Section 1983 as a vehicle to bring claims for which Title VII provides a complete remedy." *City of Cottonwood*, 2012 WL 2976162, at *16. Title VII preempts Plaintiff's Section 1983 claim and therefore the Court will dismiss Count IV.

**IV. Conclusion**

The Court will grant Defendant's Motion to Dismiss in part. The only remaining claims are Count I for religious discrimination under Title VII and Count II for retaliation under Title VII. Plaintiff does not specifically name Mr. LeFevre and Mr. Vidale as individually liable for these Counts, and therefore the Court will dismiss those Defendants from this action. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (holding there is no individual liability under Title VII).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 15) is **granted** in part and **denied** in part as described in this Order. Specifically, the Motion is **denied** with respect to Count I (Title VII Religious Discrimination) and Count II (Title VII Retaliation). The Motion is **granted** with respect to Count III (State Whistleblower Claim), and that count is dismissed, with prejudice. Count IV (42 U.S.C. § 1983 Claim), as alleged, is also dismissed, without prejudice.

…

**IT IS FURTHER ORDERED** that the Clerk of Court shall dismiss Defendants Andrew LeFevre and Anthony Vidale from this action.

Dated this 5th day of October, 2021.

Honorable Diane J. Humetewa
United States District Judge